471 So.2d 1234 (1985)
George Washington RIDDLES
v.
STATE of Mississippi.
No. 55079.
Supreme Court of Mississippi.
June 5, 1985.
*1235 Jon H. Hill, Odom & Hill, Corinth, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
PATTERSON, Chief Justice, for the Court:
George Washington Riddles was indicted and convicted on one (1) count of burglary and larceny and one (1) count of grand larceny by the Circuit Court of Alcorn County. He was sentenced to five (5) years imprisonment on each count with the sentences to run consecutively. On appeal, Riddles assigns as reversible error:
1. There was no probable cause for his arrest;
2. The trial court erred by permitting into evidence statements and physical evidence obtained as the result of illegal arrests; and
3. The verdict of the jury was against the overwhelming weight of the evidence.
At approximately 9:40 p.m., on August 11, 1982, Officer J.R. Henderson (Henderson) left the police station in Corinth, in response to a burglar alarm call coming from Refreshments, Inc., a business establishment in the city. When Henderson arrived at the source of the call, he was joined by Kenneth Williams, President of Refreshments, Inc., and the two men immediately observed a metal, rolling door that had been pried up. Upon entering the building it was apparent there had been a burglary. A search of the building and grounds revealed the unknown burglar had fled the scene. After a short period of additional investigation Henderson returned to the police station.
Henderson again left the station at about 10:45 p.m., in a police cruiser in response to another call. While performing this mission he observed a person walking down Waldron Street approximately 100 to 250 yards from Refreshments, Inc., the site of his previous burglary investigation. He approached the person to question him because his suspicions were aroused by the pedestrian's proximity to the scene of the burglary and because he was wet and covered with weed seeds.
When asked for an explanation of his condition, the suspect (Riddles) responded that he had been laying out drunk. Henderson testified, however, that Riddles did not appear drunk, did not stagger, and did not smell of alcohol at the time. Riddles was "patted down" by Henderson but this search revealed nothing.
*1236 Riddles was then taken to the police station for further questioning concerning the burglary. At the station he was given the normal Miranda warning and was afterwards seen stuffing something under the cushion of a chair. An investigation disclosed the objects sought to be concealed were .22 caliber cartridges. Thus alerted, the officers searched the police cruiser in which Riddles had been transported to the station and there discovered a .22 caliber pistol concealed between the cushion and the back of the seat. A further search of Riddles person revealed a vending machine key and a coca cola promotional billfold, both of which had been left by Williams in his desk at Refreshments, Inc.
Subsequently, after 35 to 40 minutes of interrogation and after again being informed of his Miranda rights, Riddles confessed to the burglary.
For reversal Riddles first contends there was no probable cause for Henderson to arrest him but that he was in fact arrested when placed in the police car. We agree that Riddles was in fact arrested when he was confronted and questioned by Henderson and then placed in the police car. We conclude this is so because Riddles could not have believed under such circumstances that he was free to leave. We reach this decision despite the protestation of Henderson that he did not actually place Riddles under arrest until sometime after their arrival at the police station.
In United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the Supreme Court characterized the meaning of "arrest" in the following language:
We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See Terry v. Ohio, supra, [392 U.S. 1] at 19, n. 16, 88 S.Ct. 1868, [at 1879, n. 16] 20 L.Ed.2d 889, 44 Ohio Ops 2d 383 [(1968)]; Dunaway v. New York, 442 U.S. 200, 207, and n. 6, 99 S.Ct. 2248 [2253, and n. 6] 60 L.Ed.2d 824 [(1979)]; 3 W. LaFave, Search and Seizure 53-55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. 446 U.S. at 555-556, 100 S.Ct. at 1877-1878.
Earlier cases of this Court accord with Mendenhall. See Reed v. State, 199 So.2d 803 (Miss. 1967), and Gearing v. State, 185 So.2d 652 (Miss. 1966).
When the constitutional validity of an arrest is challenged it becomes the function of the court to determine whether the facts available to the officer at the time of arrest warrant a man of reasonable intelligence and caution to believe an offense had been committed, and that the offense was committed by the person arrested. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
In this case there is no question that Henderson knew a burglary had been committed at Refreshments, Inc. The remaining probable cause question is whether the facts known to Henderson would lead a reasonable person to believe Riddles was the offender. The following facts were known to Henderson at the time of the arrest.
1. Refreshments, Inc., had been burglarized about one hour earlier;
2. It was late at night and Riddles was approximately 100 to 250 yards from the burglary scene;
3. Riddles was wet and covered with seed particles; and
4. The explanation offered by Riddles was inconsistent from that of a person who had been recently drinking heavily.
*1271 Under the totality of the circumstances it is our opinion there were sufficient facts and probable cause for Riddles' arrest. We conclude the first assignment of error is without merit.
Fully aware that physical evidence found by officers after the detention of a suspect cannot be used to bolster the propriety of an arrest, we need note for clarity, we think, that the morning following the arrest a fresh path through the tall weeds and grass to the rear of the burglarized business establishment led to a "bed" or area of compressed grass where a large portion of the $1200 taken in the burglary was recovered. Williams, the President of Refreshments, Inc., made this discovery and testified that when he emerged from the grass and weeds he was very wet and covered with weed particles.
At trial Riddles testified that he did not break into Refreshments, Inc. As mentioned he contended his confession was "tainted" by an illegal arrest and in explanation of his activities on the evening of the burglary, stated that he was walking home from a relatives house and drinking whiskey. Feeling sick he lay down to rest and later, according to him, picked up the billfold and vending machine key on Waldron Street just before he was detained by Henderson. His contention next is, as best we understand it, that the billfold and vending machine key were rightfully in his possession even though their presence was revealed by a contended illegal arrest. We think this contention is answered by our conclusion to the first assignment of error. Nevertheless we go further to state that the plausibility or truth of Riddles' explanation of the key and billfold being in his possession was for the jury to determine and they resolved it against him. We conclude the second assignment of error is without merit.
Finally, Riddles argues the verdict of the jury was against the overwhelming weight of the evidence. Deciding as we do, that the vending machine key, the coca cola billfold, and Riddles' confession were all admissible into evidence, we find the jury's verdict of guilty was supported by sufficient legal evidence and that his conviction and sentence should be affirmed.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.